[No. 39009. En Banc. August 24, 1967.]

THE STATE OF WASHINGTON, *Respondent, v.* MERCIE D. WILSON, *Appellant.*\*

*William F. Lockett,* for appellant.

*Charles O. Carroll* and *Edmund P. Allen,* for respondent.

NEILL, J.—■ One of the most cherished rights of the peoples of this free society is the right to be tried by a jury of our peers, which jury shall consist of people with no bias, prejudice, or previous commitment. The appeal in this case raises the issue of whether the defendant was granted

\*Reported in 431 P.2d 221.

a trial by such a jury or whether certain statements made by a juror evidenced such prejudice that she was not tried by such a jury. It might be said that an American jury—particularly in a capital case—should be, like Caesar's wife, "above suspicion." At the same time, the stability of a jury verdict must be maintained against collateral attack and impeachment from within. Thus the rule is as set forth in *State v. Parker,* 25 Wash. 405, 415, 65 Pac. 776 (1901):

> [E]ntirely discard those portions [of testimony and affidavits] which may tend to impeach the verdict of the jurors, and consider only those facts stated in relation to misconduct of the juror, and which in no way inhere in the verdict itself. It is not for the juror to say what effect the remarks may have had upon his verdict, but he may state facts, and from them the court will determine what was the probable effect upon the verdict.

Having in mind these principles, we examine the facts which give rise to this appeal.

Defendant was charged with first degree murder for the pistol slaying of a man in or near a Seattle cafe. For the purposes of fully illustrating the issue of this case, we should point out that the shooting occurred in a predominently Negro section of Seattle; that the defendant is Negro; that her counsel is Negro; and that one member of the jury was Negro. However, we hasten to add that the same issues could arise should the neighborhood, the defendant, the counsel and a juror be Chinese, Japanese, Italian, Irish, or any ethnic group. During a noon recess of the trial, a woman juror in this cause entered a lunchroom reserved for jurors who are not ordered confined by the court. A number of jury panelists were in the lunchroom, but none of such group were jurors on defendant's case. One of such panelists, a Mrs. Boyd, reported to the trial judge that a woman juror hearing the Mercie Wilson case entered the lunchroom and in a disturbed manner expressed resentment that defendant was allowed to be free on bond; that defendant, with her friends, was allowed to visit the restroom which the women jurors were also using; that "they traveled in droves or packs"; that the courtroom

was half filled with Negroes; that "we have to sit there and listen to all this stuff and then run into or see her outside." After verdict, the trial court properly advised defendant's counsel of the alleged incident.

The jury returned a verdict of first degree murder against defendant on April 21, 1966, but did not recommend the death penalty. Upon defendant's motion for new trial, her counsel indicated to the court that he had received information which would indicate racial prejudice on the part of one of the women jurors. Thereupon the court continued the matter in order to give the defendant and the state an opportunity to submit affidavits. At the court's request, a hearing on the matter was held on May 26, 1966, at which hearing the panelist testified in substance as hereinbefore set forth and identified one of the women jurors on this case as the juror who made such statements in the lunchroom. The court caused subpoenas to be issued to all of the women jurors who sat on defendant's case and examined each of these women, in addition to examining the panelist who reported the incident. The court denied the motion for new trial, stating

I suppose really the question the court has to decide in this matter is whether or not when the juror was asked whether or not she had any bias or prejudice with reference to the defendant's race or counsel's race that would really deny a fair trial, I suppose this is really what we are talking about. I don't know of any better way of putting it because in the final analysis, Mr. Lockett, every one of us has certain bias and prejudices. So the thing becomes quite relative and the court has to exercise its own sound judgment in determining whether the things set forth in Mrs. Boyd's affidavit are such as to indicate a bias which would obviate a fair trial.

I am inclined to feel that Mrs. Boyd's affidavit is accurate and that her testimony is accurate. . . .

The record, I think, is clear. I think there are two things that are manifest in Mrs. Boyd's affidavit. One is that Mrs. Wilson was free on bond, charged with first degree murder, walking the corridors, going into the rest room, going to the lunchroom, driving a car, seeming to

be free to go and come as she chose. Until recent years, it has been practically unknown for a person charged with first degree murder to be free on bond and I can understand this creating some resentment on the part of jurors, just general resentment and wonder.

I can also understand, I suppose, jurors going into the women's washroom at 1:20 in the afternoon being told that they must report back here to the jury room at 1:25, and there being a lack of sufficient available spaces and they all having to hurry and Mrs. Wilson perhaps being in the washroom and somebody making some comment and being irritated about that and consequently being delayed in some fashion.

I suppose we have to then say, are these the kind of things that cause jurors to disregard their obligations as viewed by their oath, and further, whether these irritations which can then cause expressions such as those which were made in Mrs. Boyd's presence. Would these then lead the court to believe that the juror had such a bias against a Negro as to cause her not to be able to give Mrs. Wilson a fair trial? I have to face facts. I have to face the realities of the situation in this case and the facts are that there were a large number of Negroes involved in this case. Yet, nevertheless, some of the comments that were made related to "they" generally. There were also caucasians involved who testified.

I just cannot find that there was a state of mind on the part of the juror in question which satisfies me that she could not have tried the issue impartially and without prejudice to the substantial rights of the defendant.

Defendant assigns as error the court's denial of a new trial in view of its findings that the facts set forth in Mrs. Boyd's affidavits regarding the juror were true.

 Accepting, as we should, the facts as found by the trial court and set forth above, were the words and actions of the juror misconduct and was she a prejudiced or biased juror? The trial court answered this question in the negative and we agree with its analysis and conclusion. In order for this court to overturn the determination of the trial court and order a new trial, we would have to find that as a matter of law the action of the juror constituted misconduct which denied defendant a fair trial. While the facts differ, the observation by this court in *State v. Adamo*, 128

Wash. 419, 223 Pac. 9 (1924), are quite apropos. The granting or denial of a new trial is a matter primarily within the discretion of the trial court and we will not disturb its ruling unless there is a clear abuse of discretion. *State v. Marks, ante* p. 295, 427 P.2d 1008 (1967); *State v. Welty,* 65 Wash. 244, 118 Pac. 9 (1911).

This case is an excellent example of the reason for and the validity of the oft repeated observation that the trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge than can we from a cold, printed record. However, since the issue here is one of law—whether the facts as set forth constitute misconduct of a juror denying defendant a fair trial—we have carefully read and reviewed the record before us on this issue and we cannot conclude that, as a matter of law, such conduct constitutes denial of defendant's right to be tried by an impartial jury.

The judgment is affirmed.

ALL CONCUR.