# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49890-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER LEE COBB, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Christopher Lee Cobb guilty of two counts of unlawful possession of a controlled substance with intent to deliver and first degree unlawful possession of a firearm. Cobb appeals, asserting that (1) the trial court abused its discretion by denying his CrR 7.5 motion for a new trial based on the jury finding previously undiscovered evidence during its deliberations and, alternatively, (2) his defense counsel was ineffective for failing to discover the evidence before trial. In his statement of additional grounds (SAG), Cobb argues that the trial court erred by failing to suppress evidence based on a search warrant that he contends lacked probable cause in support. We affirm.

## FACTS

On February 9, 2016, the Pierce County Sheriff's Department obtained a warrant to search Cobb and his 2016 Chevrolet Impala for evidence of illegal drug activity. On February 13, the sheriff's department obtained a second warrant to search Cobb and his 2014 Dodge Charger.

On February 16, Deputy Kory Shaffer saw Cobb leave an apartment and place a small dark backpack in the trunk of his Impala. Shaffer then saw Cobb drive to multiple parking lots

and have brief interactions with people who approached his vehicle. Based on his training and experience, Shaffer believed these short interactions were consistent with illegal drug transactions. Shaffer lost sight of Cobb and the Impala after Cobb drove to a parking lot in an apartment complex. Officers later saw Cobb leaving the parking lot in the Charger. Officers followed Cobb to another parking lot and executed the search warrant.

Officers from Special Weapons and Tactics (SWAT) and the Special Investigations Unit (SIU) approached the parked Charger while Cobb was sitting the driver's seat. Another man, identified outside the presence of the jury as Lamontez Patton, was standing outside the passenger door. SWAT officers announced their presence before deploying a flash-bang device to disorient Cobb and Patton. Officers also broke the rear driver's side window and front passenger side window before opening the front driver's side door and removing Cobb from the vehicle and arresting him.

Officers found a Glock .45 semi-automatic handgun and $6,193 in cash on Cobb's person. Officers also found a camouflage backpack on the rear passenger seat of the Charger. Inside of the backpack, officers found latex gloves, assorted baggies, a baggie containing 45 grams of methamphetamine, a baggie containing 76-78 grams of heroin, a baggie containing brown sugar, a digital scale with apparent heroin residue on it, a blender with apparent heroin residue, a plastic cup with white residue, and a partially filled box of .45 ammunition.

After being advised of his *Miranda*[1] rights, Cobb agreed to speak with Shaffer. Cobb told Shaffer that he was not employed, used heroin and methamphetamine, and sold drugs in

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

quantities of "teeners" and "balls"[2] to support his habit. Verbatim Report of Proceedings (VRP) (Volume III) at 73. Cobb also stated that he knew he was prohibited from possessing a firearm but that he carried it for safety because "he has been ripped before." VRP (Volume III) at 73-74. Cobb told Shaffer that he was planning to pick up an ounce of heroin and methamphetamine that day.

The State charged Cobb with two counts of unlawful possession of a controlled substance with intent to deliver and one count of first degree unlawful possession of a firearm. Before trial, Cobb moved to suppress evidence seized during the February 16 arrest and search of his person and vehicle. Cobb's suppression motion asserted that the February 13 search warrant was based on stale probable cause. Following a hearing, the trial court denied Cobb's suppression motion and later entered findings of fact and conclusions of law in support of its ruling.

At trial, witnesses testified consistently with the facts as stated above. Additionally, Pierce County Sheriff's Deputy Tom Olesen testified that officers had attempted to execute a search warrant on Cobb on February 13, three days prior to his February 16 arrest. Deputy Olesen stated that on February 13, three unmarked police vehicles attempted to block the vehicle Cobb was driving. Cobb struck two of the vehicles when he fled. Deputy Olesen was unable to pursue Cobb because his vehicle had been disabled by Cobb's collision with it.

During deliberations, the jury found an empty bag with brown residue and a casino card with Patton's name on it in the front zipper pocket of the camouflage backpack that was admitted as a trial exhibit. The jury submitted a question asking whether they were to consider those

---

[2] Shaffer testified at trial that a "teener" means "one sixteenth of an ounce" and that a "ball" or "8-ball" means "an eighth of an ounce." VRP (Volume III) at 73.

items as evidence in the case. The State and defense counsel agreed that the jury could consider those items as evidence. The trial court submitted a response to the jury's question stating, "The exhibit is being marked as 49(a), part of the admitted exhibit." Clerk's Papers (CP) at 144. The jury thereafter returned verdicts finding Cobb guilty of the charged offenses. The jury also returned special verdicts finding that Cobb was armed with a firearm during the commission of his two counts of unlawful possession of a controlled substance with intent to deliver.

Before sentencing, Cobb filed a CrR 7.5 motion for a new trial based on the jury finding previously undiscovered evidence in the backpack during its deliberations, which motion the trial court denied. Cobb appeals.

## ANALYSIS

### I. MOTION FOR NEW TRIAL

Cobb first contends that the trial court abused its discretion by denying his CrR 7.5 motion for a new trial. We disagree.

CrR 7.5 governs motions for a new trial and provides in relevant part:

> (a) Grounds for New Trial. The court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:
>     . . . .
>
> (3) Newly discovered evidence material for the defendant, which the defendant could not have discovered with reasonable diligence and produced at the trial;
>
> (4) Accident or surprise;
>
> (5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial.

A new trial in a criminal proceeding "is necessitated only when the defendant 'has been so prejudiced that nothing short of a new trial can insure that the defendant will be treated fairly.'" *State v. Bourgeois*, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997) (quoting *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994)). The mere possibility of prejudice is insufficient to warrant a new trial. *State v. Lemieux*, 75 Wn.2d 89, 91, 448 P.2d 943 (1968).

We will not disturb a trial court's ruling on a motion for a new trial absent "'clear abuse of discretion.'" *State v. McKenzie*, 157 Wn.2d 44, 51-52, 134 P.3d 221 (2006) (quoting *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)). "An abuse of discretion will be found 'only when no reasonable judge would have reached the same conclusion.'" *McKenzie*, 157 Wn.2d at 52 (internal quotation marks omitted) (quoting *Bourgeois*, 133 Wn.2d at 406). As an initial matter, the State argues that Cobb waived his contentions with the jury's consideration of previously undiscovered evidence found in the backpack by failing to object until after it had reached its verdicts. We agree with the State.

Our Supreme Court has held that a "motion for a new trial is not a substitute for raising a timely objection that could have completely cured the error." *State v. Jones*, 185 Wn.2d 412, 426, 372 P.3d 755 (2016). "Indeed, the failure to raise a timely objection strongly indicates that the party did not perceive any prejudicial error until after receiving an unfavorable verdict." *Jones*, 185 Wn.2d at 426-27.

Cobb contends that the purported error in the jury finding previously undiscovered evidence prejudiced his right to present a complete defense and to a fair trial because, had defense counsel known that Patton's casino card was contained in the backpack, counsel could have presented the defense that another suspect had possessed the backpack found in the

backseat of Cobb's vehicle. However, Cobb could have sought remedial measures short of a new trial upon his discovery that Patton's casino card was contained in the backpack. For example, Cobb could have sought a continuance to reevaluate his trial strategy and could have moved to reopen the case to present additional evidence concerning possession of the backpack at issue.

It is well established that a trial court has discretion to allow a party to reopen its case to present additional evidence. *Estes v. Hopp*, 73 Wn.2d 263, 270-71, 438 P.2d 205 (1968); *State v. Miles*, 168 Wash. 654, 13 P.2d 48 (1932); *State v. Brinkley*, 66 Wn. App. 844, 848, 837 P.2d 20 (1992). Had Cobb been granted a motion to reopen the case, he could have presented a defense that another suspect had possessed the backpack at issue and thereby cured the prejudice he had claimed for the first time in his motion for a new trial. Instead, Cobb declined to raise any objection regarding the previously undiscovered evidence until after the jury returned its adverse verdicts. By doing so, he has waived his grounds for a new trial under CrR 7.5. *Jones*, 185 Wn.2d at 426-27.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Cobb argues that his defense counsel was ineffective for failing to discover Patton's casino card before trial. On this record, we disagree.

To demonstrate ineffective assistance of counsel, Cobb must show both (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Prejudice occurs where there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Here, Cobb contends that he was prejudiced by defense counsel's failure to discover the casino card because "[t]here is a reasonable probability that evidence of Patton's connection to the crime would have raised a reasonable doubt as to Cobb's guilt." Br. of Appellant at 20. However, the presence of Patton's casino card in the backpack, alone, did not undermine the evidence showing Cobb's constructive possession of the backpack and the items contained therein.

Constructive possession may be established by evidence that the defendant had dominion and control over an item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Dominion and control can be over "either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969). Dominion and control need not be exclusive to establish constructive possession, but close proximity alone is insufficient; other facts must enable the trier of fact to infer dominion and control. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008).

Here, the backpack and items in it were located on the backseat of the Charger Cobb was driving. Facts apart from close proximity tended to show Cobb's dominion and control over the backpack. Shaffer observed Cobb possess a similar backpack while engaged in suspected illegal drug transactions. Additionally, the backpack contained a partially-filled box of .45 ammunition, and a Glock .45 handgun was found on Cobb's person. Cobb also admitted to selling the same type of narcotics found in the backpack and that he was planning to obtain more of those same narcotics on the day of his arrest. Evidence that another person's casino card was contained in

the backpack does not undermine this evidence of Cobb's dominion and control over the backpack. Accordingly, Cobb fails to make the necessary showing of prejudice in support of his ineffective assistance of counsel claim.

To the extent that Cobb is asserting Patton's connection to the backpack could have resulted in the discovery of additional evidence raising a reasonable doubt as to his guilt if discovered before trial, such assertion is unsupported by the record before us. Although defense counsel was unaware of the casino card contained in the backpack, the record shows that counsel was aware of Patton's presence near the Charger when Cobb was arrested, had spoken with him, and declined to call him as a witness. As such, Cobb's claim that he was prejudiced by defense counsel's failure to discover the casino card before trial is speculative and lacks support in the record. Accordingly, we hold that Cobb fails to demonstrate ineffective assistance of counsel.

### III. SAG/MOTION TO SUPPRESS

In his SAG, Cobb asserts that the trial court erred by failing to grant his motion to suppress evidence seized pursuant to the February 13 search warrant. Specifically, Cobb contends that (1) the February 13 search warrant was based on stale probable cause and (2) the affidavit in support of the February 13 search warrant failed to establish a nexus between the alleged criminal activity and the Charger. On both contentions, we disagree.

A search warrant may issue only upon a determination of probable cause "based upon facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or that contraband exists at a certain location." *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists as a matter of law if the affidavit in support of the warrant contains sufficient facts and circumstances to establish a reasonable inference that the

8

defendant probably engaged in illegal activity and that evidence of that illegal activity is at the location to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Thus, "'probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

We generally review the validity of a search warrant for abuse of discretion, giving great deference to the issuing judge or magistrate. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, in reviewing a trial court's determination of probable cause at a suppression hearing, we review the trial court's conclusions of law de novo. *State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791 (2015). Under our de novo review, we determine "whether the qualifying information as a whole amounts to probable cause." *Dunn*, 186 Wn. App. at 896. This review is limited to the four corners of the document supporting probable cause. *Neth*, 165 Wn.2d at 182. Facts that, standing alone, do not support probable cause can support probable cause when viewed together with other facts. *Cole*, 128 Wn.2d at 286. We review a search warrant's supporting affidavit "'in a commonsense manner, rather than hypertechnically'" and resolve any doubts in favor of the warrant. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012) (quoting *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)).

A.    Staleness

Cobb first contends that the trial court erred in denying his suppression motion because the information presented in the probable cause affidavit was stale. We disagree.

Whether information contained within a search warrant affidavit is stale depends on the circumstances of each case. *Lyons*, 174 Wn.2d at 361. Some length of time naturally passes

between observations of suspected criminal activity and the presentation of an affidavit to an issuing magistrate or judge. *Lyons*, 174 Wn.2d at 360. However, when the passage of time is so prolonged that it is no longer probable that a search will uncover evidence of criminal activity, the information underlying the affidavit is deemed stale. *Lyons*, 174 Wn.2d at 360-61.

Cobb asserts that the information underlying the affidavit in support of the February 13 search warrant was stale because it contains the following language, which was identical to that in the affidavit in support of the February 9 search warrant:

> Within the past seventy two hours the C/I [(Confidential Informant)], while under constant surveillance of the Pierce County Sheriff's Department Special Investigations Unit, has made a controlled buy of methamphetamine from [Cobb]. Prior to the buy the C/I was searched. No money or narcotics were located. The C/I called [Cobb] on his cellular telephone and they agreed to meet in a public parking lot in Pierce County.

CP at 27. Cobb argues that this information, as it pertains to the February 13 search warrant, was stale because it did not provide sufficient information from which the issuing magistrate could determine whether the "past seventy two hours" was in reference to the date of the second search warrant application or merely reiterated the facts supporting the issuance of the first search warrant. In resolving this argument at the suppression hearing, the trial court concluded as follows:

> Chronologically, the description of the controlled buy in the February 13 search warrant complaint is placed after [a description of the February 13] encounter with law enforcement. The encounter with law enforcement occurred after Deputy Shaffer obtained the February 9 search warrant. In addition, the February 13 search warrant complaint contains additional information not included in the February 9 affidavit, regarding the fact that defendant retrieved the methamphetamine from the brown back pack before selling it to the CI. A common sense reading of the search warrant complaints would indicate that the controlled buy, which was said to have occurred within the last 72 hours, is not the same controlled buy referenced in the February 9 complaint.

10

CP at 105. We agree with the trial court's conclusion.

A commonsense reading of the February 13 search warrant affidavit indicates that the controlled buy described therein was within 72 hours of that warrant's application, and not the same controlled buy described in the application for the February 9 search warrant. As the trial court recognized, although using the same language as in the previous search warrant affidavit, the February 13 reference to a controlled buy occurring within the past 72 hours follows a description of the facts underlying the attempted service of the February 9 search warrant. When read in a commonsense manner and in context with the otherwise chronological description of facts supporting probable cause in the February 13 affidavit, the controlled buy described therein occurred *after* February 9 and, thus, could not be the same controlled buy described in the February 9 search warrant application.

Additionally, the February 13 search warrant affidavit described particular facts regarding the controlled buy not described in the previous affidavit, namely that Cobb had retrieved the suspected methamphetamine from a brown backpack. In short, there was nothing within the four corners of the February 13 search warrant affidavit showing that the controlled buy described therein occurred at any time other than 72 hours before submission of that search warrant application. Accordingly, the trial court properly concluded that the information contained therein was not stale.

B.     Nexus

Next, Cobb appears to argue that the February 13 search warrant affidavit failed to establish a nexus between evidence of suspected illegal narcotics activity and the Charger. We disagree.

11

Cobb's argument on this point relies on the search warrant affidavit lacking facts that a controlled buy had occurred while he was in the Charger. However, such facts are not required to establish probable cause. Rather, the affidavit was required only to present sufficient facts to establish a reasonable inference that evidence of Cobb's alleged illegal activity would be found in the Charger. *Thein*, 138 Wn.2d at 140.

Here, the February 13 search warrant affidavit provided the following facts supporting a nexus between Cobb's suspected criminal activity and the Charger. The CI stated that Cobb had retrieved methamphetamines from a brown backpack during the controlled buy that had taken place in the Impala. Sometime after the controlled buy, Shaffer observed Cobb carrying a brown backpack while leaving an apartment where he commonly parked his Impala. Shaffer then saw Cobb look around the parking lot, open the trunk to the Charger, and place the backpack inside. Shaffer saw another individual approach the Charger and talk with Cobb while Cobb retrieved something from the trunk. After the other individual left, Cobb slowly drove the Charger to another location of the parking lot and parked. After Cobb appeared to be using his cell phone, another individual approached the driver's side of the Charger and appeared to make contact with Cobb as Cobb sat in the driver's seat of the vehicle. After the apparent contact, Cobb slowly drove away from the parking lot.

Taken together, and when read in a commonsense manner, the above facts establish a reasonable inference that evidence of Cobb's suspected illegal narcotics activity would be found in the Charger. Accordingly, we affirm the trial court's ruling denying Cobb's motion to

No. 49890-1-II

suppress, and we affirm Cobb's convictions.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.