IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINTON, | ) | |
| | ) | No. 40495-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAMASO ALEJANDRO MONTES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Damaso Alejandro Montes appeals his convictions for one count of

first degree rape of a child and two counts of first degree child molestation. He contends

that there is a scrivener's error in the judgment and sentence. The State concedes.

Montes also submitted a lengthy statement of additional grounds for review (SAG)

raising numerous additional issues.

We reject the issues raised in Montes' SAG, affirm his convictions, and remand

for the trial court to strike the offending paragraph.

BACKGROUND

Montes lived with his girlfriend, and three of her children, including G.B.,

between January 2017 and February 2019. Montes was 23 years old and G.B. was 8

years old in January 2017.  When they moved from California to Pasco, Washington, they initially lived with Montes' uncle.

After residing there for two weeks, the girlfriend and her children moved into a motel. Montes moved into the motel with his girlfriend about a month later.  The family lived at the motel from September 2017 to approximately May 2019, during which time G.B. would watch her two younger siblings after school while her mother was at work. Montes generally left the motel at the same time as G.B.'s mother, but at times he would remain there or return to the motel earlier than G.B.'s mother.

In December 2022, G.B. ran away from home and was gone for approximately one week.  When she returned home, G.B. disclosed to her mother that Montes abused her while they were living in the motel.  G.B. and her mother were interviewed by law enforcement in January 2023 and were referred to the Support Advocacy Resource Center (SARC).

G.B. was interviewed at SARC.  She stated that the first incident of abuse occurred at Montes' uncle's house when Montes came up behind her, hugged her, and placed his hands on her breasts.

G.B. also described instances of Montes touching her while they lived in the motel.  She explained that Montes touched her breasts, vagina, and buttocks both above and under her clothes multiple times.  She asserted that Montes touched her breasts on at least five occasions and her vagina on two occasions.

She also disclosed that Montes repeatedly got into bed with her, and that one time, he tried to insert his penis into her vagina. G.B. also recalled instances when Montes inserted his penis between her thighs and moved back and forth between them. She also shared that Montes occasionally would masturbate while he touched her.

The State charged Montes with two counts of first degree child rape and two counts of first degree child molestation by amended information, and alleged aggravating factors of position of trust and ongoing pattern of sexual abuse on each of the four counts. The amended information alleged that the offenses occurred "on or between January 1, 2017 and February 7, 2019." Clerk's Papers (CP) at 68-70. In the to-convict jury instructions, the State specified the date range for the crimes as occurring "on or between January 1, 2017 and February 7, 2019." CP at 208, 210.

The jury found Montes guilty of one count of first degree rape of a child and two counts of first degree child molestation. The jury also returned special verdicts, unanimously finding the aggravating factors on each of those counts. The court sentenced Montes to serve 277 months to life of confinement.

Montes timely appealed.

ANALYSIS

1. SCRIVENER'S ERROR

Both Montes and the State agree that the trial court mistakenly filled in paragraph 4.1(B) on the judgement and sentence, which pertains only to sentences for aggravated

3

murder by persons under 18 years old. Both parties request that the case be remanded for the trial court to strike the scrivener's error.

"A 'scrivener's error' is a clerical mistake that, when amended, would correctly convey the trial court's intention based on other evidence." *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). "Correction of this type of error does not require resentencing." *Id.* "The remedy for clerical or scrivener's errors in judgment and sentence forms is remand to the trial court for correction." *State v. Sullivan*, 3 Wn. App. 2d 376, 381, 415 P.3d 1261 (2018).

Here, the trial court correctly entered Montes' sentence in paragraph 4.1(A) but transposed the same sentence in paragraph 4.1(B). But paragraph 4.1(B) only applies to sentences under "RCW 10.95.030(2) (Aggravated murder and under age 18)." CP at 244. Because Montes was tried and found guilty of child rape and molestation, filling out paragraph 4.1(B) was an obvious clerical error, which the trial court should strike on remand.

2. STATEMENT OF ADDITIONAL GROUNDS

Montes raises four issues in his SAG. We discuss each, in turn, after a review of the applicable standards.

*A. SAG Standards*

A defendant may file a pro se SAG. RAP 10.10(a). However, there are several limitations to our review of a SAG. First, we generally consider only issues raised in a SAG that adequately inform us "of the nature and occurrence of the alleged errors." *State*

*v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). In addition, we only consider arguments that are not repetitive of briefing. RAP 10.10(a). Last, issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a SAG. *Alvarado*, 164 Wn.2d at 569.

### B. SAG Issue 1

Montes first argues that the trial court abused its discretion in allowing bias jurors to sit for his trial. He points out that several potential jurors disclosed they had been victims of sexual abuse or were close to someone who had been sexually abused, which Montes argues made them unfit to serve impartially in his sex offense trial. Montes specifically identifies potential jurors 1, 31, 58, 68, and 86 as being prejudiced. Significantly, none of these potential jurors were empaneled for Montes' trial. While several other jurors who were empaneled did indicate that they or someone they knew had been a victim of a sexual crime, none of the empaneled jurors made statements showing actual bias.

Montes fails to show error because he does not demonstrate that any of the jurors empaneled for his case were prejudiced. Both the United States and Washington State Constitutions provide a right to trial by an impartial jury, which "requires a trial by an unbiased and unprejudiced jury, free of disqualifying jury misconduct." *State v. Boiko*, 138 Wn. App. 256, 260, 156 P.3d 934 (2007); *see* U.S. CONST. amend. VI; WASH. CONST. art. I, § 21. Importantly, a trial court has considerable discretion in conducting voir dire. *Lopez-Stayer v. Pitts*, 122 Wn. App. 45, 50, 93 P.3d 904 (2004). Substantial

deference is accorded to trial courts in determining whether a juror is biased, as trial judges are uniquely positioned to observe and evaluate jurors' conduct and credibility. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 807, 425 P.3d 807 (2018). For this reason, this court reviews a trial court's decision to empanel the jury for a manifest abuse of discretion. *State v. Birch*, 151 Wn. App. 504, 512, 213 P.3d 63 (2009). Abuse of discretion occurs when a trial court bases its decision on untenable grounds or untenable reasons. *Lopez-Stayer*, 122 Wn. App. at 50.

A trial court must excuse any juror who has manifested unfitness by reason of bias or prejudice. RCW 2.36.110. To excuse a juror due to bias or prejudice, it must be shown that the juror had "actual bias." RCW 4.44.170(2). "Actual bias" means "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). However, "equivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside." *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991). A party claiming actual bias must establish it by proof. *Id*. at 838. To prevail, the party must show more than a possibility of prejudice. *Id*. at 840. "[T]he law presumes each juror sworn is impartial and qualified to sit on a particular case, otherwise he would have been challenged for 'cause.'" *State v. Latham*, 30 Wn. App. 776, 781, 638 P.2d 592 (1981).

Here, nothing in the record demonstrates that the trial court allowed jurors with actual bias to be seated. Of the members of the jury who were seated, including the 2 alternates, 11 stated in their jury questionaries that they or someone they knew had been a victim of sexual crimes. Yet none of these jurors made statements reflecting actual bias or the inability to be impartial. Additionally, petit jurors 6, 44, 49, 63, and 66 made unequivocal statements that they could be fair, impartial, and keep an open mind, despite their own personal experience with the crimes alleged. Given the lack of evidence to support that an impartial juror was seated on the jury, the trial court did not abuse its discretion in seating the jury.

### C. SAG Issue 2

Montes next argues that the State failed to prove the specific dates alleged in the information and G.B.'s mother's dates of employment. He characterizes these as essential elements of the crime. Both of these arguments fail.

### i. Additional Background

The amended information alleged that the offenses occurred "on or between January 1, 2017 and February 7, 2019." On behalf of the State, five people testified: G.B. about the sexual abuse she experienced; G.B.'s mother about G.B.'s emotional state during the date range and subsequent disclosure; a child forensic interviewer and expert witness about general patterns children exhibit in child forensic interviews and the content of G.B.'s interview; the lead investigator for the case about the evidence he collected and the difficulty in child sex abuse cases with delayed disclosures; and the

initial responding officer who described G.B.'s emotional state when she reported the abuse.

G.B. specifically testified that when she moved into the motel in 2017, Montes started abusing her. She explained that the sexual abuse continued until she was about eleven or twelve years old.

### ii. Analysis

First, Montes argues there was insufficient evidence to support the conviction because the dates on which the offenses occurred went unsubstantiated and, therefore, an essential element of the crime was not proved. This argument fails regardless of whether Montes is referring to the lack of specific dates on which the offenses occurred or claiming that there is a failure to prove that the offenses occurred within the given time frame.

To the extent Montes is arguing that specific dates on which the offenses occurred had to be included in the information and subsequently proved at trial, his argument fails. The charging document is constitutionally sufficient "only if all essential elements of a crime, statutory and non-statutory, are included in the document." *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). "An 'essential element is one whose specification is necessary to establish the very illegality of the behavior' charged." *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). In child sex abuse cases, the precise date of abuse is not an essential element of the charge. *State v. Brooks*,

195 Wn.2d 91, 97, 455 P.3d 1151 (2020). "[T]he wording of the time reference in the original information put[s the defendant] on notice that the [sex abuse] charge was alleged flexibly as to the timing of that incident." *Id*. at 100. "'[W]here time is not a material element of the charged crime, the language "on or about" is sufficient to admit proof of the act at any time within the statute of limitations, so long as there is no defense of alibi.'" *Id*. (alteration in original) (quoting *State v. Hayes*, 81 Wn. App. 425, 432, 914 P.2d 788 (1996)).

As noted, the amended information charged Montes with first degree rape of a child and two counts of first degree child molestation "on or between January 1, 2017 and February 7, 2019." CP at 68-70. Not only do these crimes not require proof that the offenses occurred on a specific date, but the broad date range put Montes on notice that the State only needed to prove that the offenses occurred within the date range and not on a specific date.

To the extent Montes is arguing that the State failed to produce evidence that the offenses occurred within the alleged date range, his argument also fails. In a criminal case, "[t]he State has the burden of proving the elements of a crime beyond a reasonable doubt." *State v. Clark*, 190 Wn. App. 736, 755, 361 P.3d 168 (2015). "Generally, the date of an offense is not an essential element of the crime." *State v. Sanchez*, 31 Wn. App. 2d 372, 380, 554 P.3d 373 (2024). "For crimes in which the exact date is not an essential element, the State is required to prove only that the crime was committed before the expiration of the statute of limitations." *Id*. But if the date of an offense is included

in the to-convict jury instruction, it becomes an essential element that the State must prove beyond a reasonable doubt. *Id*. at 379. However, the State must prove that the offenses only occurred around the time of the alleged date or date range. *See State v. Polk*, 187 Wn. App. 380, 395, 348 P.3d 1255 (2015).

When a defendant challenges sufficiency of the evidence for a given offense, this court views "the evidence in the light most favorable to the prosecution" and assesses whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025). "A challenge to the sufficiency of the evidence admits the truth of the State's evidence. '[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Clark*, 190 Wn. App. at 755 (citation omitted) (internal quotation marks omitted) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). This court "defer[s] to the trier of fact on 'issues of witness credibility.'" *Id*. (quoting *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014)). Direct and circumstantial evidence are weighed equally. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019).

Montes was convicted of one count of first degree rape of a child and two counts of first degree child molestation. In the to-convict jury instructions, the State specified the date range, making it an essential element of the crimes that they occurred "on or between January 1, 2017 and February 7, 2019." CP at 208, 210.

Here, viewing the evidence in a light most favorable to the State and all reasonable inferences from it, the State provided sufficient evidence that Montes committed the crimes on or between January 1, 2017 and February 7, 2019. The testimony at trial demonstrated that, while G.B. lived in the motel with Montes from 2017 to 2019, he sexually abused G.B. at least eleven times. G.B. testified that the abuse started when her family moved into the motel with Montes and it stopped when G.B.'s older siblings moved to Washington to live with them. G.B.'s mother confirmed that they lived in the motel starting in 2017. She also confirmed that G.B.'s older siblings came to live with them in February 2019. This testimony provided sufficient evidence that Montes committed the crimes on or between the alleged date range of January 1, 2017 to February 7, 2019.

Lastly, the issue of G.B.'s mother's unsubstantiated dates of employment is not preserved. RAP 2.5(a). Defense counsel did not raise this objection in the trial court. Nevertheless, G.B.'s mother's specific dates of employment had no bearing on the timing of the offenses and, therefore, are not essential elements of the alleged offenses. Defense sought to inquire about G.B.'s mother's employment records because she worked under a false name and defense wanted to use that evidence to question her credibility. The trial court permitted such use.

*D. SAG Issue 3*

Montes next argues that G.B. provided overly generic testimony that does not substantiate the elements of the alleged offenses. He claims that the only evidence

against him was testimony by G.B., and it does not provide specificity in terms of the time, dates, and place the alleged acts occurred. We disagree.

"Multiple count sexual assault convictions have been affirmed under Washington case law notwithstanding the State's reliance on 'generic' child testimony." *Hayes*, 81 Wn. App at 435. Courts routinely use a 3-prong test set forth in *Hayes* to determine whether a child's testimony is sufficiently concrete and goes beyond generic testimony:

> First, the alleged victim must describe the kind of act or acts with sufficient specificity to allow the trier of fact to determine what offense, if any, has been committed. Second, the alleged victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged by the prosecution. Third, the alleged victim must be able to describe the general time period in which the acts occurred. The trier of fact must determine whether the testimony of the alleged victim is credible on these basic points.

*Id*. at 438.

When the victim in *Hayes* described how the defendant usually assaulted her (in the defendant's bed, he was on top of her, he used paper towels to clean themselves) and tied the abuse to events in her life occurring around the same time, the court found that the first prong of the test was met. *Id*. The victim's "testimony that [the defendant] had intercourse with her at least 'four times' and up to 'two or three times a week' establishe[d] the second prong." *Id*. at 439. Finally, the victim's testimony that the abuse occurred in a two-year time frame fulfilled the third prong. *Id*. at 439.

G.B.'s testimony, similar to that in *Hayes*, gave a date range when the acts occurred with specificity as to the place they occurred and how it happened. G.B. stated

12

clearly and with detail the way in which the offenses occurred, describing at least four

distinct occurrences and referencing at least six other instances of similar conduct,

fulfilling the first prong and second prong of the test articulated in *Hayes*. G.B. also gave

a time range of about one year or more when the offenses occurred, establishing the third

prong. Therefore, the trial court reasonably allowed such testimony to be weighed by the

jury in relation to the alleged offenses.

### E. SAG Issue 4

Lastly, Montes argues that the trial court abused its discretion when it admitted

testimony of uncharged sexual offenses other than those alleged in this trial, and

testimony of alleged domestic violence occurring between Montes and G.B.'s mother.

### i. Additional background

During the trial, G.B. testified about uncharged domestic violence occurring

between Montes and G.B.'s mother. Defense counsel questioned G.B. on cross-

examination about the alleged domestic violence. Defense counsel then objected when

the State asked G.B.'s mother about the domestic violence between her and Montes and

objected to the admittance of G.B.'s testimony about the earlier referenced domestic

violence. The trial court sustained the objection and ruled that the mother could not

testify about the alleged domestic violence. Additionally, the court found that G.B.'s

testimony regarding the domestic violence could not be admitted as it would be far more

prejudicial than probative.

13

When G.B. stated that the sexual abuse by Montes also occurred outside of Washington, before the alleged period of time when the offenses occurred, defense counsel objected and moved for a mistrial. The trial court overruled the objection and denied the motion. The trial court found that minimal prejudice occurred from the testimony because G.B. only mentioned once that the abuse occurred outside of Washington with no additional detail provided.

### ii. Analysis—Testimony of Uncharged Domestic Violence

This issue was preserved. However, because the trial court ruled that the mother could not testify about any uncharged domestic violence, Montes fails to identify the occurrence of any error. *Alvarado*, 164 Wn.2d at 569. Furthermore, Montes does not make an argument that the error flows from the jury having heard testimony about uncharged domestic violence. Instead, Montes argues that the testimony of the violence was admitted and caused prejudice amongst the jury. Significantly, the trial court did not admit any testimony regarding uncharged domestic violence as evidence. Therefore, Montes fails to identify any error for this court to review.

### iii. Analysis—Motion for Mistrial Denial

Though the issue of the trial court denying defense's motion for a mistrial was also preserved, we conclude that the trial court did not abuse its discretion.

We review a trial court's decision on a motion for mistrial for abuse of discretion. *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967). "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial

14

can ensure that the defendant will be fairly tried." *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). On the other hand, "denial of a motion for mistrial should be overturned only when there is a substantial likelihood that the prejudice affected the verdict." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010).

In determining whether a trial irregularity warrants a mistrial, we consider the three *Hopson*[1] factors. *State v. Garcia*, 177 Wn. App. 769, 776, 313 P.3d 422 (2013). The factors are the seriousness of the irregularity, whether the irregularity involved cumulative evidence, and whether the trial court properly instructed the jury to disregard it. *Hopson*, 113 Wn.2d at 284. The trial court is in the best position to discern prejudice. *Id*.

The irregularity in question is G.B.'s testimony that the sexual abuse by Montes started in California prior to the Washington offenses for which Montes was being tried. The trial court found that the mention of uncharged sexual abuse occurring previously did not greatly prejudice Montes because he was charged with a pattern of sexual abuse rather than a single incident. We give the trial court deference in its assessment of prejudice inflicted. *Garcia*, 177 Wn. App. at 784; *see Hopson*, 113 Wn.2d at 284. Therefore, even if the jury heard testimony of abuse occurring before the time period of the charged offenses, this irregularity was not serious enough so as to materially affect

---

[1] *State v. Hopson*, 113 Wn.2d 273, 778 P.2d 1014 (1989).

15

the outcome of the trial.  There was no information concerning the nature or number of previous sexual abuse, and the jury had overwhelming evidence favoring conviction.

Furthermore, there was no cumulative evidence regarding the uncharged abuse in California.  There was only the single mention by G.B.  The trial court chose not to instruct the jury at the request and agreement of defense counsel so as not to draw attention to the irregularity.  This was proper given the circumstance and request of defense counsel.

All things considered, nothing in the record indicates that the mention of previous sexual abuse outside of Washington affected the verdict.  As a result, we conclude that the trial court did not abuse its discretion in denying the motion for a mistrial.

We affirm Montes' conviction and remand with instructions to strike the offending paragraph from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.

16