

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 1 6 2018
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Aug. 16, 2018

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 94681-7 |
| v. | ) | |
| | ) | En Banc |
| JEROME CURRY, Jr., | ) | |
| | ) | |
| Respondent. | ) | Filed AUG 1 6 2018 |
| | ) | |

WIGGINS, J.—After unsuccessfully representing himself at trial, Jerome Curry Jr. appealed his drug convictions to the Court of Appeals, challenging the trial court's decision to allow Curry to represent himself. The Court of Appeals reversed, holding that the trial court should not have granted Curry's request to proceed pro se. The State of Washington now appeals to this court. To determine whether the trial court abused its discretion when it granted Curry's request for self-representation, we must determine whether Curry's request to represent himself was unequivocal. We hold that it was. We therefore reverse the Court of Appeals and remand to the appellate court to resolve the remaining outstanding issues.

## FACTS AND PROCEDURAL HISTORY

In 2015, Jerome Curry was facing drug charges and an approaching trial date when he was appointed a new defense attorney. Curry's new attorney determined that

he would not be ready for trial by the scheduled date and thus sought a continuance. Curry was unwilling to accept a trial delay, so he asked his attorney to set a motion hearing to allow him to represent himself or, alternatively, to substitute counsel. On Curry's behalf, defense counsel filed a motion to act pro se or select new counsel. The motion explicitly stated that Curry made the request to represent himself "without any equivocation":

> Mr. Curry has again requested to represent himself as a Pro Se. He states that he is expressing this desire with knowledge of the possible risks and without any equivocation. The record supports the conclusion that he does in fact understand what it means to represent himself.

Clerk's Papers (CP) at 51. The court held a hearing on the motion. The judge engaged Curry in a lengthy colloquy and ultimately granted Curry's request to proceed pro se.

The colloquy addressed the following subjects: confirmation of Curry's desire to proceed to trial; a recitation of the charges against Curry and the potential sentences for those charges; confirmation that Curry understood the charges, potential sentences, and standard ranges; Curry's reason for wanting to proceed pro se, which was to avoid further delay; Curry's education and ability to read and write; Curry's prior experience representing himself, with mixed results; cautionary warnings about self-representation, e.g., "if you are representing yourself, you're on your own," Report of Proceedings (RP) at 10; admonition that if Curry represented himself, he "would still be required to follow the very same rules that the attorney, the prosecutor would have to follow," *id.* at 11; Curry's reasons for dissatisfaction with current and confirmation that Curry had not been influenced, threatened, or promised anything for representing himself, and that this was "a voluntary decision just from

2

[Curry's] own thinking about it," *id*. at 14-15.

In addition, the trial judge repeatedly cautioned Curry that self-representation was not a wise choice: "I don't think it's a wise choice to represent yourself. . . .You're facing a lot of downside here if convicted . . . and the danger of being convicted of these matters would result in a lot of prison time." *Id*. at 14.

Curry stated several times that he felt he had "no choice" but to represent himself, *id*. at 4, 12, and at one point stated that "[i]t's not voluntary. It's I have no choice in the matter," *id*. at 19. The trial court pursued these remarks, and Curry agreed that he felt he had no choice because he did not want any more continuances of the trial date and his attorney could not be adequately prepared without one or more continuances.[1]

Ultimately, the trial judge granted the motion and permitted Curry to represent himself. The trial judge also assigned standby counsel and published an order that

---

[1] When Curry stated he had "no choice," the trial judge sought clarification:

> THE COURT: Well, it's either your freewill choice of doing this, or somehow there's been some pressure put on you. And the only pressure I recall you saying is the time pressure; that is, that you believe you don't have a choice because you don't want an extension of the trial date, since you have other affairs that you believe you need to take care of. And you'd rather have an outcome quicker rather than later on. That's what I understand you to say. Is that accurate?
>
> THE DEFENDANT: That's—that's accurate.
>
> THE COURT: Okay. So, with all that, the court finds it is appropriate to permit Mr. Curry to represent himself.

RP (May 7, 2015) at 19.

3

outlined the findings from the hearing, including a finding that Curry's request to proceed pro se was unequivocal.

Curry represented himself pro se at trial. The jury found Curry guilty on all counts. Curry appealed his convictions, claiming his request for self-representation was not unequivocal. On direct review, the Court of Appeals reversed, holding that Curry's request to represent himself was equivocal and was based on Curry's desire to avoid a trial delay and therefore should not have been granted.

We now reverse the Court of Appeals and hold that Curry's request to represent himself was unequivocal and that the trial court did not abuse its discretion by granting the request.

## ANALYSIS

Criminal defendants have a right to self-representation under the Washington Constitution and the United States Constitution. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010) (citing WASH. CONST. art. I, § 22 ("the accused shall have the right to appear and defend in person"); *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)). However, the right to self-representation is neither self-executing nor absolute. *Id.* at 504. In fact, the right to self-representation is in tension with another crucial constitutional right: a defendant's right to the assistance of counsel. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). Because of this tension, a defendant must unequivocally request to proceed pro se before he or she will be permitted to do so. *Id.* This requirement protects defendants from inadvertently waiving assistance of counsel and protects trial courts from "manipulative vacillations by defendants regarding representation." *Id.* Additionally, "a

4

trial court must establish that a defendant, in choosing to proceed pro se, makes a knowing and intelligent waiver of the right to counsel." *Id.* at 377.

Here, Curry contends that his request to proceed pro se was not unequivocal and that, as a result, the trial court abused its discretion when it allowed Curry to represent himself at trial.[2] The Court of Appeals reversed the trial court, finding that "[t]he qualifications attached to Mr. Curry's request for self-representation constituted equivocation." *State v. Curry*, 199 Wn. App. 43, 45, 398 P.3d 1146, *review granted*, 189 Wn.2d 1009, 403 P.3d 41 (2017). The Court of Appeals further held that when a defendant requests to proceed pro se to avoid a trial delay, it is valid only if the record as a whole "demonstrate[s] the defendant is clear eyed in his strategy and not merely frustrated with the slow pace of the legal process." *Id.* at 50.

The State appealed, again on the narrow question of whether Curry's request to represent himself was unequivocal. We hold that the trial court did not abuse its discretion in granting Curry's request to represent himself, and thus we reverse and remand to the Court of Appeals to resolve the remaining issues.

I.  Abuse of Discretion

We review a trial court's decision to grant or deny a defendant's request to proceed pro se for abuse of discretion. *Madsen*, 168 Wn.2d at 504. A trial court has abused its discretion if its decision "is manifestly unreasonable or 'rests on facts

---

[2] Curry does not assert a violation of his right to a speedy trial, nor did he challenge his convictions on the grounds that his request for self-representation was not voluntary, intelligent, or knowing. However, Curry did challenge his convictions on grounds unrelated to his self-representation, which the Court of Appeals did not reach and which were not raised here.

5

unsupported in the record or was reached by applying the wrong legal standard.'" *Id.* (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

A trial judge afforded discretion is not free to act at whim or in boundless fashion, and discretion does not allow the trial judge to make any decision he or she is inclined to make:

> "The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to 'the primordial necessity of order in the social life.' Wide enough in all conscience is the field of discretion that remains."

*Coggle v. Snow*, 56 Wn. App. 499, 504-05, 784 P.2d 554 (1990) (quoting Benjamin Cardozo, The Nature of the Judicial Process 141 (1921)). But, within bounds set by case law and statute, the grant of discretion is broad: "Affording discretion to a trial court allows the trial court to operate within a 'range of acceptable choices.'" *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (internal quotation marks omitted) (quoting *Rohrich*, 149 Wn.2d at 654).

Thus, we give great deference to the trial court's determination: even if we disagree with the trial court's ultimate decision, we do not reverse that decision unless it falls outside the range of acceptable choices because it is manifestly unreasonable, rests on facts unsupported by the record, or was reached by applying the wrong legal standard. *See State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

We must remain mindful of several factors when reviewing a trial court's decision to grant or deny self-representation for abuse of discretion. First, the trial

6

court is in a favorable position compared to that of an appellate court. Trial judges have far more experience considering requests to proceed pro se and are better equipped to balance the competing considerations. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (stating that "'the trial judge,' having 'seen and heard' the proceedings 'is in a better position to evaluate and adjudge than can we from a cold, printed record'" (quoting *State v. Wilson*, 71 Wn.2d 895, 899, 431 P.2d 221 (1967))). Additionally, trial courts have the benefit of observing the behavior and characteristics of the defendant, the inflections and language used to make the request, and the circumstances and context in which it was made. *See id.*

Second, whether a request for self-representation is unequivocal must be determined on a case-by-case basis, considering the circumstances, the defendant, and the request. *Sisouvanh*, 175 Wn.2d at 621-22 (applying an abuse of discretion standard when "a determination is fact intensive and involves numerous factors to be weighed on a case-by-case basis" (citing *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003); *State v. Garza*, 150 Wn.2d 360, 366, 77 P.3d 347 (2003))). The decision is inevitably fact intensive and involves the weighing of numerous factors. *See DeWeese*, 117 Wn.2d at 378 (noting that the validity of a waiver of counsel depends on the facts of the case and that "there is no checklist of the particular legal risks and disadvantages attendant to waiver which must be recited to the defendant").

Third, a generally applicable rule cannot be effectively constructed. *Sisouvanh*, 175 Wn.2d at 621-22. This is because the decision is fact specific and the extent of the trial court's discretion is partially tied to the timing of a defendant's request to

7

proceed pro se. *State v. Breedlove*, 79 Wn. App. 101, 107, 900 P.2d 586 (1995) (discretion of a trial court "lies along a continuum that corresponds with the timeliness of the request to proceed pro se"); *State v. Fritz*, 21 Wn. App. 354, 361, 585 P.2d 173 (1978). Accordingly, we have not articulated a bright-line rule instructing the trial court when to grant and when to deny a request for self-representation, nor is it pragmatic to do so.

Under an abuse of discretion standard, we do not reverse a trial court's decision unless the trial court applied the wrong legal standard, based its decision on facts unsupported by the record, or made a decision that is manifestly unreasonable—even if we may have reached a different conclusion on de novo review. With these considerations in mind, we now examine whether the trial court abused its discretion when it granted Curry's request for self-representation.

## II.    A Request for Self-Representation Must Be Unequivocal

Trial courts must "indulge in 'every reasonable presumption against a defendant's waiver of his or her right to counsel'" before granting a defendant's request to waive the right to assistance of counsel and proceed pro se. *Madsen*, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting *In re Det. of Turay*, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)). This requires the court to engage in a two-step determination. First, the court must determine whether the request for self-representation is timely and unequivocal. *Id.* If the request for self-representation is untimely or equivocal, the defendant's right to counsel remains in place and the trial court must deny the request to proceed pro se. *State v. Woods*, 143 Wn.2d 561, 587-88, 23 P.3d 1046 (2001). Second, if the request is timely and unequivocal, the court

8

must then determine whether the request is also voluntary, knowing, and intelligent.[3] *Madsen*, 168 Wn.2d at 504.

The threshold issues of timeliness and equivocality focus on the nature of the request itself—if, when, and how the defendant made a request for self-representation—not on the motivation or purpose behind the request. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989).

The requirement that a defendant's request for self-representation be unequivocal serves dual purposes. First, it protects defendants from inadvertently waiving their right to counsel through spontaneous expressions of frustration or "occasional musings on the benefits of self-representation." *Id.* Second, the requirement "prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation." *Id.*

The competing rights to counsel and self-representation can place the trial court in a difficult position: if the trial court "'too readily accedes to the request, an appellate court may reverse, finding an ineffective waiver of the right to counsel. But if the trial court rejects the request, it runs the risk of depriving the defendant of his right to self-representation.'" *DeWeese*, 117 Wn.2d at 377 (quoting *State v. Imus*, 37 Wn. App. 170, 179-80, 679 P.2d 376 (1984)). Requiring an unequivocal request for self-representation "resolves this dilemma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel." *Adams*, 875 F.2d at 1444.

---

[3] We do not address whether Curry's request was timely or whether his waiver of counsel was knowing, voluntary, and intelligent because those issues were not raised in this appeal.

To determine if a request for self-representation was unequivocal, the court must in fact answer two questions: (1) Was a request made? If so, (2) was that request unequivocal? Accordingly, when determining whether the defendant made an unequivocal request for self-representation, the trial court must focus on if and how the request was made and on the nature of the request. In doing so, the court should examine the "facts and circumstances" of the case, *DeWeese*, 117 Wn.2d at 378, while indulging in "'every reasonable presumption against a defendant's waiver of his or her right to counsel,'" *Madsen*, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting *Turay*, 139 Wn.2d at 396).

To determine whether a request was made, the court can consider the following nonexclusive factors: (1) how the request was made—for example, was the request made formally in a motion or spontaneously at a hearing?, *compare Madsen*, 168 Wn.2d 496, *with State v. Luvene*, 127 Wn.2d 690, 903 P.2d 960 (1995); (2) the language used in the actual request—for example, was the defendant asking to proceed pro se or expressing frustration?, *compare Madsen,* 168 Wn.2d 496, *with Luvene*, 127 Wn.2d 690; and (3) the context surrounding the request—for example, was the request made after counsel sought a continuance or because of a disagreement regarding strategy?, *see State v. Modica*, 136 Wn. App. 434, 149 P.3d 446 (2006), *aff'd*, 164 Wn.2d 83, 186 P.3d 1062 (2008); *DeWeese*, 117 Wn.2d 369.

In *Woods*, we held that a defendant's statement was not a request for self-representation but merely an expression of frustration. 143 Wn.2d at 587. There, the defendant interjected during a hearing on a motion for continuance to say that he would "'be prepared to proceed . . . with this matter here without counsel'" on its

10

scheduled date. *Id.* at 574. We held that "telling a trial judge [the defendant] 'will be prepared to proceed without counsel' is qualitatively different from telling a judge that one wishes to proceed pro se," and that the defendant's comments were "not an expression of an unequivocal desire to represent himself." *Id.* at 588.

The defendant in *Luvene* also expressed frustration rather than unequivocally requesting self-representation. At a hearing, Luvene's counsel requested a trial continuance. Luvene objected to the continuance, stating:

> "I've been here since July. . . . You know, I don't wanna sit here any longer. It's me that has to deal with this. If I'm prepared to go for myself, then that's me. You know, can't nobody tell me what I wanna do. They say I did this, so why not—if I wanna go to trial, why can't I go to trial on the date they have set for my life? I'm prepared. I'm not even prepared about that. I wanna go to trial, sir. . . .
>
> "I don't wanna extend my time. This is out of my league for doing that. I do not want to go. If he's not ready to represent me, then forget that. But I want to go to trial on this date."

*Luvene*, 127 Wn.2d at 698. We held that Luvene's statements were an "expression of frustration" with the delay in trial, not an unequivocal assertion of Luvene's right to self-representation. *Id.* at 699.

When determining whether a defendant's request to proceed pro se is unequivocal, the court must also examine the nature of the request. Relevant considerations include whether the request was made as an alternative to other, preferable options and whether the defendant's subsequent actions indicate the request was unequivocal. These factors are not dispositive, though they should be considered. An otherwise unequivocal request to proceed pro se is valid even if combined with an alternative request for new counsel; but such a request "may be an

indication to the trial court, in light of the whole record, that the request is not unequivocal." *State v. Stenson*, 132 Wn.2d 668, 740-41, 940 P.2d 1239 (1997). And if the defendant makes an explicit request to proceed pro se, that request is not necessarily rendered equivocal simply because it is motivated by a purpose other than a desire to represent him- or herself, such as frustration with the speed of trial or an attorney's performance. *Modica*, 136 Wn. App. 434.

For example, in *Modica*, the Court of Appeals held that the trial court did not abuse its discretion in allowing the defendant to represent himself, even though frustration in a trial delay motivated the request. *Id*. There, the defendant was dismayed when his attorney sought a six-week continuance. *Id*. at 439. Modica asked to proceed pro se, and after a lengthy colloquy, the trial court granted his request. *Id*. at 440. Modica reaffirmed his desire to represent himself multiple times until the day after the jury was impaneled when he moved for reappointment of counsel. *Id*. The trial court denied the motion. *Id*.

The Court of Appeals held that Modica had made an unequivocal request to waive his right to counsel and proceed pro se, regardless of his motivation: "Here, Modica made a strategic choice to assert his right to self-representation in order to proceed to trial more quickly than the four to six weeks it would take his new attorney to adequately prepare. Whatever his underlying motivation for doing so, his request was clear and unequivocal." *Id*. at 442 (footnote omitted).

Similarly, in *DeWeese*, we held that the trial court did not abuse its discretion by allowing the defendant to represent himself, even though the defendant's request was motivated by frustration with the attorney's performance and was accompanied

12

by a request that counsel be replaced, because his request was unequivocal and otherwise proper. 117 Wn.2d at 377.

This court has not provided an explicit definition of what qualifies as an unequivocal request for self-representation. However, we adopt the Ninth Circuit's articulation: an unequivocal request to proceed pro se requires a defendant to "make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself." *United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994). To be reasonably certain that the defendant wishes to represent himself, the trial court must first determine whether a request for self-representation was made at all and, if so, whether that request reflected a desire to exercise the right to self-representation. Further, the trial court must make these determinations on a case-by-case basis, taking into consideration the circumstances of each request.

III. The Trial Court Did Not Abuse Its Discretion When It Granted Curry's Request To Proceed Pro Se

We hold that Curry's request to represent himself was unequivocal and that the trial court did not abuse its discretion. Here, the trial court's decision was made using the correct legal standard, was supported by substantial evidence, and was reasonable. *Rohrich*, 149 Wn.2d at 654. As a result, we reverse the Court of Appeals.

A. *The trial court applied the correct legal standard*

The trial court based its decision on the correct legal standard. A defendant's waiver of the right to counsel and request to proceed pro se must be timely,

13

unequivocal, voluntary, knowing, and intelligent. *Madsen*, 168 Wn.2d at 504. At issue here is whether Curry's request was unequivocal.

Here, the trial judge was clearly aware of and applied the correct legal standard to Curry's request for self-representation. An oral proclamation from the judge that a request for self-representation is unequivocal is not required if the record reflects that the judge applied the correct requirement. *See DeWeese*, 117 Wn.2d at 378 (colloquy not required, but in absence of colloquy, record must reflect minimum requirements of valid waiver). Here, the trial court did not state on the record that it had found Curry's request unequivocal, but the record reflects the trial court's implicit finding of unequivocality. Curry's motion to proceed pro se, the colloquy that occurred at the hearing on the motion, and the subsequent order written by the trial judge confirm that the judge was aware of and applied the correct legal standard when making this decision.

First, the motion filed on Curry's behalf outlined the relevant legal standards and then declared that those standards were met.[4] Second, during the hearing on Curry's request to proceed pro se, the trial court engaged Curry in an extensive colloquy regarding his wish to represent himself. The trial court inquired about Curry's motivation, his education, his knowledge of trial procedures, his experience

---

[4] The motion stated:

> Mr. Curry has again requested to represent himself as a Pro Se. He states that he is expressing this desire with knowledge of the possible risks and without any equivocation. The record supports the conclusion that he does in fact understand what it means to represent himself.

CP at 51.

14

representing himself in other matters, and whether he was threatened or promised anything by any outside sources or if the decision was his alone. The trial court also ensured that Curry was aware of his possible prison time if convicted and was "aware that there are dangers and pitfalls of self-representation." RP at 18.

Third, after orally granting Curry's request to represent himself, the trial court filed an order appointing Curry backup counsel. This order outlines the trial judge's findings with respect to Curry's self-representation, including the unequivocal nature of Curry's request:

> Jerome J. Curry's motion to proceed pro se was granted on May 7th, 2015. The Court engaged in a colloquy with Mr. Curry on that same date. Mr. Curry was fully advised of the following:
>
> 1) He has a right to appointed counsel;
>
> 2) He has a right to hire counsel of his choice;
>
> 3) Self representation cannot be used to disrupt or delay proceedings;
>
> 4) His request to proceed pro se with standby counsel is unequivocal; and
>
> 5) He will be held to the standard of an attorney for all proceedings in this matter.

CP at 61. Here, the trial court applied the correct legal standard: the trial court held a hearing on Curry's motion, engaged in a colloquy that touched on each of the requirements of a valid waiver of the right to counsel and request to proceed pro se, and filed an order addressing the requirements.

B. *Substantial evidence supports the trial court's decision*

The trial court's decision is supported by substantial evidence. On April 24, 2015, Curry asked that his appointed counsel set a motion hearing to allow him to

represent himself or, in the alternative, to select new counsel. On April 30, 2015, Curry's appointed counsel filed a motion to act pro se or select new counsel. After explaining the factual circumstances and relevant law, the motion stated that "Curry has again requested to represent himself as a Pro Se," and it described the request as having been made "with knowledge of the possible risks and without any equivocation." CP at 51. While Curry's counsel drafted the motion, the colloquy between Curry and the court at the hearing on the motion makes clear that Curry himself was indeed making this request.

For example, when the court asked Curry why he wanted to represent himself, Curry responded that he did not want the trial "to be delayed any more, because I have obligations that I need to continue from on the streets. And, you know, if I can't continue my obligations that I need to do, you know, I might as well just do them myself. I can do bad by myself." RP at 7.

The trial court encouraged Curry to accept the help of counsel, and when the court asked Curry why he thought he was better off representing himself instead of proceeding with an attorney, Curry responded:

> Because I basically, I mean, if I've got to sit and wait until the end of June, I might as well go ahead by myself. Because I—I mean, send me to prison or release me. One of the two. I mean, I ain't got time to sit here. I mean, I have obligations on the streets. I'm losing my home. And if I've got to lose my home, I might as well defend my own self.

*Id.* at 13. The court further discouraged Curry, urged him to stay with counsel, reiterated the risk of prison time, and stated that self-representation is not a wise choice. Curry replied, "Yes, but at—if we've got to go past June 1st, I'd rather just do it myself." *Id.* at 14. Additionally, Curry stated that no one was pressuring or promising

16

him anything to represent himself and that it "[s]ort of, kind of, yes" was a voluntary decision. *Id.* at 14-15.

Additionally, Curry represented himself in an earlier trial and he indicated that he understood his responsibility for following the rules of procedure and evidence. The trial court noted that

> Mr. Curry has had the benefit of that experience. . . . Mr. Curry is saying he's—he would prefer to represent himself given the current dates and time frames of these particular matters before the court. Mr. Curry further indicates that he's aware that there are dangers and pitfalls of self-representation, as I've described.

*Id.* at 18. When asked if that was right, Curry responded, "Yes." *Id.*

The record gives no indication that Curry's request was inadvertent or accidental; it was not simply an "expression of frustration," though frustration may have been the motivation; and it was not a spontaneous comment or a musing on the benefits of self-representation. Curry repeatedly expressed a desire to represent himself. He made a request to proceed pro se in a written motion, which he discussed at length with the trial judge in a scheduled hearing. Accordingly, the trial court's decision is supported by substantial evidence.

*C. The trial court's decision was reasonable.*

"A manifestly unreasonable decision is one that is 'outside the range of acceptable choices, given the facts and the applicable legal standard . . . .'" *Dye*, 178 Wn.2d at 555 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

Here, given the facts and the applicable legal standard, the trial judge's decision to allow Curry to represent himself was reasonable. It is true that Curry did not seek

to represent himself for a strategic reason or because of a difference in opinion with his attorney regarding how the case ought to be argued. He sought to represent himself to avoid delaying his trial date. However, unlike *Luvene*, in which the defendant's statement regarding self-representation amounted only to an expression of frustration, here, Curry made an unequivocal request to proceed pro se, regardless of his motivation. Curry was warned that it was unwise for him to represent himself, he was aware of the potential sentence that his charges carried, he was not being pressured by any outside source, and he nonetheless made a clear request to represent himself. Under these circumstances, the trial court made a reasonable determination that Curry's request to proceed pro se unequivocal.

## CONCLUSION

The trial court applied the correct legal standard, and its decision to grant Curry's request for self-representation was reasonable and supported by substantial evidence. Accordingly, the trial court did not abuse its discretion by granting Curry's request for self-representation. The Court of Appeals, in reaching its decision, found it unnecessary to consider the remaining requirements to allow self-representation or several other issues raised by Curry on appeal. Accordingly, we reverse and remand to the Court of Appeals to resolve the remaining outstanding issues and for other proceedings consistent with this opinion.

_Wiggins, J._

WE CONCUR.

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Owens, J._

_Stephens, J._

_González, J._

_Yu, J._

No. 94681-7

GORDON McCLOUD, J. (concurring)—I agree with the majority that the

Sixth Amendment to the United States Constitution, like article I, section 22 of the

Washington Constitution, provides two guaranties: the criminal defendant has a

right to counsel and the criminal defendant has a right to proceed pro se. I also agree

that those two rights sometimes stand in tension with each other. *E.g.*, majority at 4,

9; *accord Faretta v. California*, 422 U.S. 806, 832-33, 95 S. Ct. 2525, 45 L. Ed. 2d

562 (1975). Finally, I agree that the majority has properly resolved that tension in

this case: Jerome Curry Jr. made an unequivocal request to proceed pro se after a

complete colloquy and full advisement of his rights.

But there is a problem with our case law on this issue. The problem is that we

have come to very different conclusions about when such advisements, colloquies,

and attempted waivers are effective. The majority's decision reaches the correct

result but does not take any steps toward resolving that inconsistency in our case

law.

I think that our conclusions vary so dramatically because we use the abuse of discretion standard to review the validity of waivers and attempted waivers of the right to counsel. We should instead apply de novo review to the trial court's legal determination of whether a criminal defendant has effectively waived the constitutional right to counsel through a particular set of advisements, questions, and answers captured on a written record. This would allow us to attain greater consistency in our case law concerning the adequacy of waivers of the right to counsel. It would also align our standard for reviewing waivers of this fundamental constitutional right with our standards for reviewing waivers of most other constitutional rights.

For that reason, I respectfully concur.

I.      Prior Decisions of This Court Have Come to Divergent Conclusions about Whether Similar Colloquies Are Adequate To Waive the Right to Counsel

Our prior decisions have reached very different conclusions about the legal significance of virtually identical waivers and attempted waivers of the right to counsel. I briefly trace the history of these decisions, before turning to our case law on how to review waivers (or attempted waivers) of other constitutional rights.

*A.* State v. DeWeese *(1991)—Second-Choice Request To Proceed Pro
Se Deemed Unequivocal*

The first post-*Faretta* case of this court to address the issue of self-representation in detail is *State v. DeWeese*. 117 Wn.2d 369, 816 P.2d 1 (1991). The *DeWeese* court addressed a self-representation request similar to the one that Curry made—and we ruled that the request was unequivocal.

In *DeWeese*, the first appointed counsel withdrew due to a conflict.[1] DeWeese then moved to replace the second appointed lawyer with a third one. The trial court denied this request and gave DeWeese a choice: it "allowed Mr. DeWeese the option of either being represented by Mr. Baum or representing himself." *Id.* at 372. The trial court advised DeWeese of the severity of his situation and the dangers of self-representation. It also "advised Mr. DeWeese against opting for self-representation rather than remaining with Mr. Baum as appointed counsel." *Id.* at 373.

DeWeese responded that this "choice"—between a lawyer he didn't want or self-representation—was really forcing him to request self-representation. *Id.* at 378. The trial court nevertheless forced—or allowed, depending on one's perspective—DeWeese to proceed pro se to trial. On appeal, following conviction, DeWeese

---

[1] *DeWeese*, 117 Wn.2d at 378 ("The record shows Mr. DeWeese's refusal to accept the professional advice of his first court-appointed counsel led to ethical problems for his attorney, which eventually led to his withdrawal from the case.").

3

argued that his request for self-representation was forced on him and, hence, that the request was equivocal and ineffective. *Id.* at 375.

We rejected DeWeese's claim and affirmed his conviction. We reviewed the trial court's decision for abuse of discretion. *Id.* at 376-77, 379. We found that despite the fact that DeWeese's request to proceed pro se was a second choice, that request was still unequivocal:

> Mr. DeWeese's *remarks that he had no choice but to represent himself rather than remain with appointed counsel, and his claims on the record that he was forced to represent himself at trial, do not amount to equivocation or taint the validity of his* Faretta *waiver.* These disingenuous complaints in Mr. DeWeese's case mischaracterize the fact that Mr. DeWeese did have a choice, and he chose to reject the assistance of an experienced defense attorney who had been appointed.

*Id.* at 378 (emphasis added).

### B. State v. Luvene *(1995)—Second-Choice Request To Proceed Pro Se Deemed Equivocal*

The next two decisions of our court came to a different conclusion based on similar records. They treated second-choice requests for pro se status, like the one that DeWeese made and the one that Curry made, as equivocal.

In *State v. Luvene*, the defendant moved to proceed pro se after his attorney obtained a continuance to interview witnesses and prepare for the penalty phase of his capital trial. 127 Wn.2d 690, 698-99, 903 P.2d 960 (1995). Luvene opposed the

4

continuance and, in doing so, stated that he would rather represent himself than wait

for counsel to be ready:

> "I've been here since July. . . . You know, I don't wanna sit here any longer. It's me that has to deal with this. If I'm prepared to go for myself, then that's me. You know, can't nobody tell me what I wanna do. They say I did this, so why not—if I wanna go to trial, why can't I go to trial on the date they have set for my life? I'm prepared. I'm not even prepared about that. I wanna go to trial, sir. . . .
>
> "I don't wanna extend my time. This is out of my league for doing that. I do not want to go. If he's not ready to represent me, then forget that. But I want to go to trial on this date."

*Id.* at 698 (quoting *Luvene* Report of Proceedings at 72-73). The trial court denied

Luvene's request. *Id.*

On appeal, Luvene argued that his statements constituted an unequivocal

request to proceed pro se. *Id.* This court did not specify our standard of review. But

we accepted the trial court's ruling that Luvene's motion was not unequivocal:

> While Mr. Luvene did state that he was "prepared to go for myself," he also stated, "I'm not even prepared about that," and "[t]his is out of my league for doing that." Taken in the context of the record as a whole, these statements can be seen only as an expression of frustration by Mr. Luvene with the delay in going to trial and not as an unequivocal assertion of his right to self-representation.

*Id.* at 698-99. Essentially we ruled that since *Luvene* requested pro se status as a second choice—and for what most would consider a poor reason—we would uphold the trial court's ruling that *Luvene* was really just expressing frustration. *Id.*

### C. State v. Stenson *(1997)—Second-Choice Request To Proceed Pro Se Deemed Equivocal*

This court came to a conclusion similar to the one in *Luvene* in *State v. Stenson*, 132 Wn.2d 668, 940 P.3d 1239 (1997), just two years later. In *Stenson*, we also held that the defendant's second-choice motion to represent himself was equivocal and, hence, insufficient. *Id.* at 741.

But the colloquy in that case was virtually identical in relevant respects to the colloquy in Curry's case. In *Stenson*, voir dire began on June 9, 1994. *Id.* at 730. On July 12, 1994, Stenson filed a motion for appointment of a new lawyer or, in the alternative, for permission to proceed pro se. *Id.* at 730-31. The trial court denied the motion the next day. It denied the request for substitute counsel on the ground that Stenson made that request only because of a disagreement with his counsel over trial tactics. *Id.* at 732-33. It denied Stenson's request to proceed pro se on the ground that Stenson's main goal was appointment of new counsel, so his alternative request to proceed pro se was not unequivocal. (It also ruled that the motion to proceed pro se was untimely). *Id.* at 733.

Stenson made a similar set of alternative motions—for new counsel or pro se

status—a few days later. *Id.* The written motion sought substitute counsel. *Id.* (citing

*Stenson* sealed Report of Proceedings at 513). But when the trial court denied that

written motion, Stenson again moved to proceed pro se:

> "THE DEFENDANT: . . . I would formally make a motion then that I be able to allow [sic] to represent myself. *I do not want to do this but the court and the counsel that I currently have force me to do this.*
>
> "As I said, I have been under the illusion that I was going to be defended. Not merely as Mr. Leatherman stated the other day, he would cross examine witnesses. That is not a defense."

*Id.* at 739 (emphasis added) (quoting *Stenson* Report of Proceedings at 3312). The

trial court denied the motion on the ground that it was equivocal and untimely:

> "THE COURT: Mr. Stenson, I do not consider the issue of the trial strategy or trial tactics which are going to be undertaken here as anything which is resolved.
>
> "THE DEFENDANT: Excuse me?
>
> "THE COURT: I don't consider that resolved. That's a decision between you and your counsel and that will have to be resolved as we get into the trial. And I can't resolve that for you.
>
> "As to a motion to represent yourself at this point in the trial, as I have indicated, certainly you have a constitutional right to do that if a motion is timely made.
>
> "At this point in time I find that that motion is not timely made and *I also find based upon your indications that you really do not want to proceed without counsel.*

"THE DEFENDANT: But likewise I do not proceed [sic] with counsel that I have.

"THE COURT: I understand that. Based upon those considerations, I'm going to deny the motion to allow you to proceed pro se."

*Id.* at 739-40 (quoting *Stenson* Report of Proceedings at 3312-13).

This court reviewed the denial of the request for self-representation for abuse of discretion. *Id.* at 737. We acknowledged that a request for self-representation can be stated "in the alternative of a request for new counsel" and still, theoretically, be unequivocal. *Id.* at 741. But we concluded that the record as a whole indicated that the defendant did not want to proceed pro se as a first choice and deemed the pro se motion equivocal for that reason. *Id.* at 741-42. We explained, "[Stenson] told the trial court that he did not want to represent himself but that the court and his counsel had *forced* him to do that. More importantly, the Defendant did not refute the trial court's final conclusion that 'he really [did] not want to proceed without counsel.'" *Id.* at 742 (emphasis added) (alteration in original) (quoting *Stenson* Report of Proceedings at 3313). We deferred to the trial court's decision that the defendant's "forced" choice to seek self-representation was not unequivocal.

8

> *D.* State v. Madsen *(2010)—Second-Choice Request To Proceed Pro Se Deemed Unequivocal*

Our court's next decision in this line of cases is *State v. Madsen*, 168 Wn.2d 496, 229 P.3d 714 (2010). In *Madsen,* the defendant moved to proceed pro se on three separate occasions. *Id.* at 500. Madsen made his first motion to proceed pro se on January 24, 2006, when "Madsen's privately retained counsel withdrew and Madsen personally moved to proceed pro se." *Id.* at 501. When the trial court inquired why Madsen wanted to represent himself, Madsen replied that he believed he "'could resolve the whole issue.'" *Id.* (quoting *Madsen* Report of Proceedings (Jan. 24, 2006) at 5). The court deferred ruling on this motion but appointed new counsel, stating, "'After you have a chance to talk with them [new counsel], if you still want to proceed pro se, I'm more than happy to hear the motion.'" *Id.*

Madsen made a second "motion to proceed pro se or in the alternative to terminate his counsel's representation" on March 7, 2006. *Id.* (citing *Madsen* Report of Proceedings (Mar. 7, 2006) at 3). During the hearing on this motion, "Madsen stated several reasons why he did not want to be represented by his then-counsel and concluded, 'I think that I'd be better off representing myself . . . .'" *Id.* (citing *Madsen* Report of Proceedings (Mar. 7, 2006) at 8). As in *Stenson*, the trial court was concerned that "Madsen's true motive was to fire counsel, not necessarily to proceed pro se." *Id.* Additionally, Madsen's counsel indicated that he had concerns

9

regarding Madsen's competency. *Id.* The trial court determined that the best option

was to appoint new counsel over Madsen's objection. *Id.* at 501-02.[2]

On May 2, 2006, Madsen made his third and final motion to proceed pro se.

"The trial court replied that it did not think Madsen was prepared to interview and

select jury members or become sufficiently familiar with the trial procedures in time

for trial." *Id.* at 502.

> The court then asked Madsen whether he still wished to represent
> himself, and Madsen replied, "*at this point I am forced, almost forced
> into doing that, so I would say yes.*" [Report of Proceedings] (May 2, 3,
> 4, 8, 2006) at 87. The court then stated, "I am going to deny your motion
> to proceed pro se. I don't feel you are prepared." *Id.* at 89.

*Id.* (emphasis added). The following day, at the prosecutor's request, the court

clarified its reasons for denying Madsen's motion. *Id.* The trial court then further

clarified its ruling in writing the next day. *Id.* at 502-03. Both clarifications focused

on Madsen's third request for self-representation, and both clarifications focused on

Madsen's courtroom conduct as well as the untimeliness of that third motion.

Madsen was convicted and the Court of Appeals affirmed. *State v. Madsen*,

noted at 143 Wn. App. 1028, 2008 WL 625282.

---

[2] Madsen offered to take an "'IQ (intelligence quotient) test,'" a "'psychological exam,'" or whatever assessment the judge wanted to show his competency. *Id* at 502 (quoting *Madsen* Report of Proceedings (Mar. 7, 2006) at 18-19). No competency hearing was ordered. *Id.* On March 9, Madsen's newly appointed counsel informed the court she had no concerns regarding Madsen's competency. *Id.*

We reversed. *Madsen*, 168 Wn.2d 496. We began by applying the abuse of discretion standard. *Id.* at 504. We held that the trial court properly deferred ruling on Madsen's first request to proceed pro se. *Id.* at 506. But we concluded that the trial court abused its discretion by failing to grant Madson's second request to proceed pro se. We acknowledged that Madsen's second request was coupled with an alternative request to fire substitute counsel. *Id.* at 507. But we did not treat these alternative requests as equivocal as we had in *Stenson* and *Luvene*. Instead, we held:

> Madsen *explicitly* and repeatedly cited article I, section 22 of the Washington State Constitution—the provision protecting Madsen's right to represent himself. *Madsen never wavered from his demand for self-representation.* Unlike his January motion, the court had clear notice; the hearing was explicitly set to consider Madsen's motion to proceed pro se or, alternatively, to fire his attorney.

*Id.* at 506-07 (second emphasis added).

E. Faretta v. California *(1975)—Second-Choice Request To Proceed Pro Se Deemed Unequivocal*

Thus, our court has a post-*Faretta* history of treating second-choice requests to proceed pro se in different ways. We should therefore go back to basics—and in this context, that means going back to the seminal United States Supreme Court case on how to treat such second-choice or "forced" requests to proceed pro se—*Faretta,* 422 U.S. at 835.

11

In *Faretta*, the defendant declared that he wanted to represent himself. But he explained that his reason for moving to proceed pro se was that the public defender's office was overburdened with an extremely heavy caseload:

> Well before the date of trial, however, Faretta requested that he be permitted to represent himself. Questioning by the judge revealed that Faretta had once represented himself in a criminal prosecution, that he had a high school education, and that he did not want to be represented by the public defender because he believed that that office was "*very loaded down with . . . a heavy case load.*" The judge responded that he believed Faretta was "making a mistake" and emphasized that in further proceedings Faretta would receive no special favors.

*Id.* at 807-08 (emphasis added) (alteration in original).

The trial court initially accepted Faretta's waiver of the assistance of counsel. *Id.* at 808. But a few weeks later, the trial court reversed itself. It held a hearing to determine Faretta's ability to conduct his own defense. It questioned Faretta about procedural matters such as the rules of evidence and the ways to challenge potential jurors. The colloquy with Faretta was extensive, and Faretta successfully fielded several technical legal questions. *Id.* at 808 n.3. The trial court nevertheless denied Faretta's request to proceed pro se. *Id.* at 808-09.

The Supreme Court reversed. It did not state what standard of review it was using. But it clearly rejected the trial court's assessment of Faretta's motion. Instead, it ruled—based on the written record—that "weeks before trial, Faretta clearly and

12

unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Id.* at 835.

This means that the Supreme Court read the record independently, without deference to the trial court, and treated Faretta's statement that the public defender was overworked, and for that reason he needed to represent himself, as "unequivocal[ ]." *Id.*

> F. *Conclusion as to This Court's Treatment of Second-Choice Requests To Proceed Pro Se*

In sum, *Stenson* and *Luvene* treated requests for pro se status, where the defendant indicated that he was being forced by circumstances to proceed pro se as a second choice, as equivocal. *Stenson*, 132 Wn.2d at 739; *Luvene*, 127 Wn.2d at 698-99. *Faretta*, *Madsen*, and *DeWeese*, in contrast, treated requests for pro se status, where the defendant indicated that he was being forced by circumstances to proceed pro se as a second choice, as unequivocal. *Faretta*, 422 U.S. at 835; *Madsen*, 168 Wn.2d at 507; *DeWeese*, 117 Wn.2d at 378.

Our trial courts do not benefit from such mixed messages. I think the problem is due in part to a deferential standard of review that prevents us from developing a consistent legal analysis of when a waiver of the constitutional right to counsel is effective. We should address the inconsistency by applying the standard of review

13

that we usually apply to review of legal and constitutional issues, including the issue

of waiver of other constitutional rights: de novo review.

II.     The Majority Is Correct That *Madsen* Adopted an Abuse of Discretion
        Standard for Reviewing the Voluntariness of Waivers of the Right to
        Counsel

The majority based its decision to review Curry's self-representation request

for abuse of discretion on *Madsen*. Majority at 5 (citing *Madsen*, 168 Wn.2d at 504).

And the majority is correct that *Madsen* adopted that deferential standard of review.

But the *Madsen* court did not explain why it adopted that deferential standard.

Instead, it stated only that "[a]s a request for pro se status is a waiver of the

constitutional right to counsel, appellate courts have regularly and properly reviewed

denials of requests for pro se status under an abuse of discretion standard." *Madsen*,

168 Wn.2d at 504 (citing *State v. Hemenway*, 122 Wn. App. 787, 792, 95 P.3d 408

(2004)). Then, based on the factual circumstances surrounding Madsen's requests

for pro se status, we ruled that the trial court had abused its discretion. *Id.* at 507.

Notably, however, we ruled that the trial court abused its discretion because

it "rel[ied] on improper legal reasoning and thus reliance on such is an abuse of

discretion." *Id.* We then explained what the legal error was in a passage that sounds

more like de novo review than deferential review: "The argument that Madsen's

request was equivocal because it was coupled with an alternative request is fallacious

14

and ignores this court's precedent." *Id.* But *Madsen* said that it was using the abuse

of discretion standard, and that deferential standard stuck.

III.    *Madsen*'s Abuse of Discretion Standard Is Incorrect:   It Conflicts in
        Principle with Decisions of This Court Applying De Novo Review to
        the Voluntariness of Waiver of Other Constitutional Rights

But we generally review the voluntariness of waivers of constitutional rights

de novo. *Madsen*'s adoption of the abuse of discretion standard conflicts in principle

with those decisions.

For example, we review the voluntariness of a criminal defendant's waiver of

his constitutional right to refuse consent to a search de novo. *E.g., State v. Budd*, 185

Wn.2d 566, 571-73, 374 P.3d 137 (2016) (reviewing de novo the issue of

voluntariness of consent to search during "knock and talk" investigations where

there was an absence of *Ferrier*[3] warnings).

Similarly, we characterize the voluntariness of a defendant's waiver of the

right to jury trial as a legal question, and we review it de novo. *E.g., State v.*

*Buckman*, 190 Wn.2d 51, 57, 409 P.3d 193 (2018) ("The standard of review in this

case is de novo. . . . [T]he request for [plea] withdrawal in this case is based on a

claimed constitutional error [involuntary waiver of right to trial and resulting guilty

plea] and resulting prejudice—both of which are issues that we review de novo.");

---

[3] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

15

*State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004) (reviewing constitutional issues de novo (citing *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004))).

Likewise, we consider the voluntariness of a waiver of the constitutional right to remain silent to be a question of law reviewable de novo. *E.g., State v. McReynolds*, 104 Wn. App. 560, 575, 17 P.3d 608 (2000) ("A trial court's determination on the 'ultimate issue of "voluntariness"' [of a confession] is a legal determination, subject to independent, de novo review." (quoting *Miller v. Fenton*, 474 U.S. 104, 110, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985))).

We seem to review the validity of a criminal defendant's waiver of the constitutional right to appeal de novo. *See State v. Sweet*, 90 Wn.2d 282, 289, 581 P.2d 579 (1978) (reviewing the record to determine the merits of the defendant's constitutional claim without presuming waiver because "it is incumbent on a reviewing court to make its own independent examination and evaluation of the facts" (citing *State v. Byers*, 85 Wn.2d 783, 539 P.2d 833 (1975)).[4]

---

[4] Other courts also review waiver of the right to appeal de novo. *United States v. Petty*, 80 F.3d 1384, 1386 (9th Cir. 1996) ("We review *de novo* the issue [of] whether [defendant] has waived his right to appeal." (citing *United States v. Catherine*, 55 F.3d 1462, 1464 (9th Cir. 1995))); *United States v. Buchanan*, 59 F.3d 914, 916 (9th Cir. 1995) (reviewing de novo the validity of a waiver of appellate rights); *United States v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994) (reviewing waiver of a statutory right to appeal de novo (quoting *United States v. Gonzalez*, 16 F.3d 985, 988 (9th Cir. 1994))).

16

We consider the validity of a waiver of *Miranda*[5] rights during a custodial interrogation to be a legal issue that is reviewed de novo. *State v. Campos-Cerna*, 154 Wn. App. 702, 708, 226 P.3d 185 (2010) ("*Miranda* claims are issues of law that we review de novo. We also review de novo the adequacy of a *Miranda* warning and whether there was a valid waiver of *Miranda* rights." (citation and footnote omitted)).

There are certainly exceptions. For example, in *State v. Garza*, we held that whether a defendant voluntarily waived his right to presence at trial is a factual determination, so we deferred to the trial court's decision on that point by using an abuse of discretion standard of review. 150 Wn.2d 360, 366, 77 P.3d 347 (2003). But in general, we review the voluntariness of relinquishment of a constitutional right de novo.

I would not depart from our general practice of reviewing claimed waivers of constitutional rights de novo in this case. Instead, I would revisit *Madsen* and apply de novo review to *Faretta* waivers also.

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

IV.  *Madsen*'s Abuse of Discretion Standard Is Incorrect:  It Conflicts Directly with the Persuasive Decisions of Other Courts Applying De Novo Review to *Faretta* Waivers

The majority relies heavily on Ninth Circuit decisions concerning the effectiveness of attempted waivers of the right to counsel. *E.g.*, majority at 13.

The Ninth Circuit, however, reviews the voluntariness of *Faretta* waivers of the right to counsel de novo. *E.g.*, *United States v. Neal*, 776 F.3d 645, 657-58 (9th Cir. 2015) ("We review whether a *Faretta* waiver satisfied these requirements de novo, even where the defendant failed to raise the issue of the validity of the *Faretta* waiver to the district court." (citing *United States v. Erskine*, 355 F.3d 1161, 1166-67 (9th Cir. 2004))); *United States v. Gerritsen*, 571 F.3d 1001, 1006 (9th Cir. 2009) ("We review the validity of a waiver of the right to counsel de novo." (citing *United States v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008))); *see also Crandell v. Bunnell*, 25 F.3d 754, 754 (9th Cir. 1994) (per curiam) ("Crandell claims he did not voluntarily waive his right to counsel and elect self-representation in the municipal court proceedings. This is a mixed question of law and fact which we review de novo." (citing *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990))); *United States v. Springer*, 51 F.3d 861, 864 (9th Cir. 1995) ("Whether a defendant knowingly, voluntarily and intelligently waived his Sixth Amendment right to

18

counsel is a mixed question of law and fact that we review *de novo*." (citing *Robinson*, 913 F.2d at 714)).

Other federal courts review *Faretta* waivers de novo also. *E.g.*, *United States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam) ("A district court's conclusion that a defendant's [*Faretta*] waiver is valid—that it is knowing, voluntary, and intelligent—is a mixed question of law and fact that we review *de novo*." (citing *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995))); *United States v. Ladoucer*, 573 F.3d 628, 633 (8th Cir. 2009) ("We review de novo a district court's decision to permit a defendant to proceed pro se." (citing *United States v. Crawford*, 487 F.3d 1101, 1105 (8th Cir. 2007))); *United States v. Belin*, 868 F.3d 43, 53-54 (1st Cir. 2017) ("[o]ur standard for reviewing the adequacy of such a warning called a *Faretta* warning . . . is effectively de novo"), *cert. denied*, 138 S. Ct. 703 (2018); *United States v. Roy*, 444 F. App'x 480, 484 (2d Cir. 2011) (*Faretta* waiver is reviewed de novo).

To be sure, that is not the universal view. Some federal courts treat the standard of review for waivers of the right to counsel as an open question. *United States v. McBride*, 362 F.3d 360, 365-66 (6th Cir. 2004) (noting that whether plain error or de novo review applies to challenges to a *Faretta* waiver remains an open question). Others apply more deferential review. For example, the Fourth Circuit

applies de novo review to a waiver of the right to counsel up until the start of trial. *United States v. Hickson*, 506 F. App'x 227, 233 (4th Cir. 2013). Once the trial has started the court reviews a district court's decision to allow a defendant to proceed pro se for an abuse of discretion. *Id.*

The majority, however, provides no explanation for its reliance on persuasive Ninth Circuit precedent for one part of the *Faretta* waiver analysis but not for this standard-of-review part of the *Faretta* waiver analysis. I would not parse out the holdings of these Ninth Circuit decisions in such a stingy manner. Instead, I would revisit *Madsen* and apply de novo review to *Faretta* waivers.

V.    *Madsen*'s Abuse of Discretion Standard Is Incorrect: It Conflicts in Principle with the Persuasive Decisions of Other Courts Applying De Novo Review to Waivers of Other Important Constitutional Rights

*Madsen*'s adoption of the abuse of discretion standard also stands in tension with the persuasive decisions of other courts applying de novo review to the voluntariness of waiver decisions by criminal defendants.

For example, other courts—including the United States Supreme Court—hold that the voluntariness of a criminal defendant's waiver of the right to remain silent (and the admissibility of subsequent confessions) is reviewed de novo. *Miller*, 474 U.S. at 110 (finding the issue of voluntariness is a legal question requiring an

independent federal determination); *United States v. Preston,* 751 F.3d 1008, 1020 (9th Cir. 2014).

Other courts hold that the voluntariness of a criminal defendant's waiver of the Sixth Amendment right to a speedy trial is reviewed de novo. *E.g., United States v. Tanh Huu Lam,* 251 F.3d 852, 855 (9th Cir. 2001) ("Lam's motion to dismiss based upon the Sixth Amendment right to a speedy trial is reviewed de novo." (citing *United States v. Beamon,* 992 F.2d 1009, 1012 (9th Cir. 1993))).

Other courts review the validity of a criminal defendant's waiver of the right to counsel during interrogation de novo. *E.g., United States v. Winn,* 969 F.2d 642, 643 (8th Cir. 1992) (reviewing magistrate judge's factual findings concerning waiver under the deferential clearly erroneous standard, but reviewing the decision on whether a valid waiver occurred as a question of law subject to de novo review).

Other courts review the voluntariness of a defendant's decision to waive the right to trial and plead guilty de novo. *E.g., United States v. Mitchell,* 633 F.3d 997, 1001 (10th Cir. 2011) ("Our review of the voluntariness of a guilty plea is de novo." (citing *United States v. Hamilton,* 510 F.3d 1209, 1215-16 (10th Cir. 2007))).

In sum, courts in other jurisdictions generally review the voluntariness of criminal defendants' waiver decisions de novo. Those decisions are consistent with

21

most of the decisions of our court, summarized in Part III, above. But they are

inconsistent with *Madsen*.

CONCLUSION

Courts—including our court—generally review a decision about the

voluntariness of a criminal defendant's waiver of an important constitutional right

de novo. This is certainly the better view. It conforms to our court's general rule that

the validity of waivers of most constitutional rights are reviewed de novo.[6] It

conforms to our court's general rule that other mixed questions of fact and law are

reviewed de novo.[7] And it conforms to the general rule in sister jurisdictions that

---

[6] *E.g.*, *State v. Herron*, 183 Wn.2d 737, 743, 356 P.3d 709 (2015) (reviewing whether a defendant waived a constitutional right to a public trial de novo).

[7] *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001) (finding ineffective assistance of counsel claims are a mixed question of law and fact that the Washington Supreme Court reviews de novo); *State v. Lopez*, 190 Wn.2d 104, 116-17, 410 P.3d 1117 (2018) (finding that legal conclusions made during ineffective assistance of counsel claims are reviewed de novo); *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017) (reviewing ineffective assistance of counsel claims de novo); *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001) ("Because claims of ineffective assistance of counsel present mixed questions of law and fact, we review them de novo." (citing *State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000))); *see also State v. White*, 80 Wn. App. 406, 410, 907 P.2d 310, 313 (1995) (reviewing challenges to effective assistance of counsel de novo); *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir. 1988) ("The question of whether an attorney renders ineffective assistance is a mixed question of law and fact, reviewed de novo." (citing *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985))).

waivers of constitutional rights, including the constitutional right to counsel, are reviewed de novo.

I would therefore revisit *Madsen* and apply de novo review to *Faretta* waivers. For that reason, I respectfully concur.

Geoff McCloud, J.